# In the United States Court of Federal Claims

No. 23-1966C

(Filed: February 13, 2024)

|   |   |
|---|---|
| **NETCENTRICS CORPORATION,** | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) |
| **THE UNITED STATES,** | ) ) |
| *Defendant,* | ) ) |
| and | ) ) |
| **LEIDOS, INC.,** | ) ) |
| *Defendant-Intervenor.* | ) ) ) |

## ORDER DENYING GOVERNMENT'S REMAND MOTION

On January 3, 2024, Plaintiff, NetCentrics Corporation, filed its amended complaint, pursuant to 28 U.S.C. § 1491(b), challenging the government's award of a Federal Trade Commission ("FTC") information technology contract to Defendant-Intervenor, Leidos, Inc. ECF No. 28. On January 11, 2024, Defendant, the United States, filed a motion for voluntary remand and stay "to reconsider certain aspects of the challenged agency decision" and "to issue a new source selection decision." ECF No 29. NetCentrics opposes the government's motion, ECF No. 31. Leidos does not. ECF No. 32. The Court denies the motion because the government has failed to provide a substantial justification for its requested remand. In particular, the government's motion lacks sufficient factual detail, is at times contradictory, and does not address several claims in the operative complaint. The proposed remand would not render the complaint moot, and, in all likelihood, would simply further delay this case.

### I. PROCEDURAL HISTORY

NetCentrics filed its initial complaint in this case on November 8, 2023. ECF No. 1. On November 15, 2023, this Court held an initial status conference and issued a scheduling order. ECF No. 20. The scheduling order memorialized the following:

> During the status conference, counsel of record for the government also informed the Court that the government has agreed to stay the procurement at issue in this case. The Court understands that the stay will preserve the status quo pending the resolution of this case . . . .

*Id.*

On December 22, 2023, NetCentrics filed two motions: (1) for leave to file an amended complaint, ECF No. 26; (2) for judgment on the administrative record, ECF No. 27. The Court granted the former, which was unopposed; NetCentrics then separately filed its amended complaint on January 3, 2024. ECF No. 28 ("Compl.").

The amended complaint asserts seven (7) substantive claims: (1) that "[b]y giving Leidos the exclusive privilege or engaging in discussions, the FTC acted unfairly and unreasonably," Compl. ¶ 60 (Count I); (2) that the FTC unreasonably waived solicitation requirements for Leidos, *id.* ¶¶ 65-73 (Count II); (3) that the FTC's technical evaluations were arbitrary and capricious, *id.* ¶¶ 80-87 (Count III); (4) that the FTC unreasonably both assigned Leidos a significant strength for a particular aspect of its proposal and failed to treat NetCetrics similarly, *id.* ¶¶ 88-97 (Count IV); (5) that the FTC unreasonably evaluated NetCentrics as having a weakness for a particular technical factor, *id.* ¶¶ 98-106 (Count V); (6) that the FTC erroneously evaluated past performance for both Leidos and NetCentrics, *id.* ¶¶ 107-118 (Count VI); and (7) that the FTC "failed to conduct a reasonable investigation of whether Leidos" had an organizational conflict of interest ("OCI"), *id.* ¶ 120 (Count VII).[1]

On January 11, 2024, the government filed its motion to remand this case and to stay the case pending the completion of the remand proceedings. ECF No. 29 ("Def. Mot."). On January 16, 2024, the Court stayed "the pending deadlines in this case until the motion to remand is resolved" via docket order. NetCentrics filed its response in opposition to that motion on January 23, 2024. ECF No. 31 ("Pl. Resp."). Leidos filed a memorandum in support of the government's motion on January 30, 2024. ECF No. 32. Also on January 30, 2024, the government filed a reply brief in support of its motion, ECF No. 34 ("Def. Rep."), with a declaration of the FTC contracting officer ("CO") attached,

---

[1] Count VIII is a catch-all allegation challenging the FTC's best value determination (based entirely on the first seven counts), while Counts IX and X are not separate allegations of agency error but rather contain only requests for declaratory and injunctive relief, respectively. *See* ECF No. 28 ¶¶ 143-52 (Count VIII); *id.* ¶¶ 153-55 (Count IX); *id.* ¶¶ 156-60 (Count X).

ECF No. 34-1 ("Decl.").[2]  On February 5, 2024, the Court held oral argument on the government's motion.  ECF No. 33 ("Tr.").

## II. THE GOVERNMENT'S REMAND MOTION

Notwithstanding the government's previous commitment to stay this procurement pending resolution of this case, ECF No. 20, the government now seeks a remand, pursuant to Rule 52.2 of the Rules of the United States Court of Federal Claims ("RCFC"), to make a new contract-award decision.  But the government has not canceled the award to Leidos and does not seek to redo this procurement in a manner that will address all the counts in NetCentrics's amended complaint.  To the contrary, the government's remand request is both exceedingly narrow and unacceptably vague.

The government, via the pending remand motion, seeks only "to conduct further communications with both vendors, permitting both vendors to provide clarity on areas of their quotations in which the agency needs additional information to evaluated performance risk . . . or to understand the vendors' commitment to the solutions proposed."  Def. Mot. at 2.  While the FTC indicates it "may choose to allow vendors to demonstrate commitment to solutions they already proposed by, for example, agreeing to financial incentives or penalties," the FTC does not intend to permit unlimited revisions.  *Id.*  To the contrary, the universe of potential revisions is quite limited.  The government specifically asserts that "the vendors will *not* be permitted to submit new quotations, to propose new technical solutions, or to alter proposed pricing."  *Id.*

The government asserts that, as a result of the remand, "some or all of the issues in this case may be rendered moot[,]" and thus "[a] remand and stay . . . promotes judicial efficiency."  Def. Mot. at 6; *see id.* at 8 ("Because the FTC, on remand, will be reconsidering the evaluations that NetCentrics has challenged and will be reconsidering its source selection decision, continuing to brief MJARs at this point would be largely futile and would waste the time and resources of the parties and the Court.").

## III. STANDARD OF REVIEW: CORRECTIVE ACTION AND VOLUNTARY REMANDS

There are several plausible means by which the government can potentially avoid litigating a procurement protest all the way to judgment on the merits.  The most obvious way is to move to dismiss for lack of Article III standing or subject matter jurisdiction

---

[2] As discussed *infra*, the government later moved for, and was granted, leave to file a corrected version of the declaration.  ECF No. 37-1.

pursuant to RCFC 12(b)(1).[3]  Another possible means for resolving a case without reaching its merits is for the government to take administrative corrective action.

A "corrective action in the bid protest context" is an "agency action, usually taken after a protest has been initiated, to correct a perceived prior error in the procurement process, or, in the absence of error, to act to improve the competitive process." *Dellew Corp. v. United States*, 855 F.3d 1375, 1378 n.2 (Fed. Cir. 2017) (internal quotation marks and citation omitted) (quoted in *Dell Federal Systems, L.P. v. United States*, 906 F.3d 982, 986 n.1 (Fed. Cir. 2018)).  Where the government announces it will take such corrective action, an "interested party" may challenge it, including by seeking a preliminary injunction pursuant to 28 U.S.C. § 1491(b).  *Dell Federal*, 906 F.3d at 990 (discussing *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1036-37 (Fed. Cir. 2009), and noting that "corrective action [is] a type of procurement action").[4]  Such challenges frequently involve corrective action initiated in response to a GAO bid protest.  *See, e.g., Sys. Application & Techs., Inc., v. United States,* 100 Fed. Cl. 687 (2011), *aff'd*, 691 F.3d 1374 (Fed. Cir. 2012); *Harmonia Holdings Grp., LLC v. United States*, 160 Fed. Cl. 674 (2022); *Novak Birch, Inc. v. United States*, 132 Fed. Cl. 578 (2017).  But "even if agency corrective action had the effect of mooting [a plaintiff's] pending [protest] claims" in this Court, a "[p]laintiff[] in any event likely could amend [its] . . . complaint[] to challenge the propriety of the corrective action." *AccelGov, LLC v. United States*, 166 Fed. Cl. 606, 612 (2023).[5]

The government can also commit to corrective action and ask the plaintiff to dismiss its case (with or without prejudice), achieving what amounts to a settlement. *Vanquish Worldwide, LLC v. United States*, 163 Fed. Cl. 57, 60 (2022) (holding that where the parties agreed to "the government['s] proposed corrective action to moot the

---

[3] *Superior Waste Management LLC v. United States*, -- Fed. Cl. --, 2024 WL 101866, at *4-7 (2024) (discussing Article III constitutional requirements and subject matter jurisdiction).  A motion to dismiss for lack of statutory standing is resolved pursuant to RCFC 12(b)(6*). CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023).

[4] *See also Accelgov, LLC v. United States*, 2023 WL 5091196, at *2 (Fed. Cl. 2023) (noting that "the government does not contest that, pursuant to *SA-Tech*, Plaintiffs may challenge the corrective action now without waiting to see the corrective action's results" (citing *Systems Application & Technologies, Inc. v. United States*, 691 F.3d 1374, 1383-85 (Fed. Cir. 2012))).

[5] *Superior Waste*, -- Fed. Cl. --, 2024 WL 101866, at *4 (explaining that mootness is a justiciability concept stemming from Article III's case-or-controversy requirement); *id.* at *10 (explaining that Article III requirements apply to cases in this Court and citing *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 964 (Fed. Cir. 2017), and *Emerald Int'l Corp. v. United States*, 54 Fed. Cl. 674, 677 n.5 (2002)).

dispute . . ., including the dismissal for mootness[,]" the defendant-intervenor in that action waived its later objections to the corrective action).

Finally, the government — with or without the other parties' consent — may ask the Court to memorialize the proposed corrective action in a remand order (*e.g.*, pursuant to RCFC 52.2). *See Defense Integrated Solutions, LLC v. United States*, 165 Fed. Cl. 352, 356 (2023) (noting that "the parties — including both the government and the then-Defendant-Intervenor . . . — agreed to the terms of a remand order for [the agency] to reconsider its decision"). Although unilateral corrective action is the norm at the GAO — that is, the protested agency does not seek the GAO's input or approval when initiating corrective action[6] — such an approach would likely be *improper* in this Court, at least where, as here, the government has agreed to a voluntary stay to preserve the status quo, *see* ECF No. 20. *Cf. Syneren Technologies Corp. v. United States*, 168 Fed. Cl. 756, 772 (2023) (rejecting the proposition that, in general, "an agency *must* seek remand to reconsider an award decision"). Where the government properly initiates corrective action to address the plaintiff's claims,[7] however, "the government bears the burden of demonstrating that [such] agency action moots a pending case." *AccelGov*, 166 Fed. Cl. at 610 (citing *SEKRI, Inc. v. United States*, 165 Fed. Cl. 21, 36–37 (2023) (rejecting the government's argument that cancellation of a procurement mooted a complaint and citing Supreme Court cases)); *see also Dellew Corp.*, 855 F.3d at 1378 (noting that "the Government filed a motion to dismiss [the plaintiff's] protest as moot in light of the corrective action"). Otherwise, there is no reason why a plaintiff isn't entitled to have this Court decide the case. *AccelGov*, 166 Fed. Cl. at 610 ("[T]he government lacks carte blanche to end cases unilaterally — whether via a voluntary remand or dismissal for mootness — simply by calling a mulligan[.]").

---

[6] Nathaniel Castellano, *Corrective Action And Voluntary Remand: Recent Developments At The GAO And The COFC*, 36 Nash & Cibinic Rep. NL ¶ 23 (April 2022) ("Once an agency announces an intent to take corrective action and reconsider a challenged procurement decision, the GAO will almost always dismiss the protest as academic. Agencies often file vague, cursory corrective action notices stating an intent to reconsider some or all issues raised in a protest that may or may not result in an amended solicitation or new award decision. Protesters regularly object to these notices, seeking additional detail as to what the agency will do in corrective action or asking the GAO to require the agency to take certain steps. Sometimes intervenors object as well, asserting that the protest allegations are meritless and do not warrant corrective action. While filing an objection to corrective action can serve an important purpose of documenting the parties' positions and preserving certain arguments, the GAO will rarely question an agency's decision to take corrective action or recommend how the agency should conduct its corrective action.").

[7] *See Syneren Technologies*, 168 Fed. Cl. at 769-71 (discussing *Department of Homeland Security v. Regents of the University of California*, 591 U.S. ––, 140 S. Ct. 1891 (2020), and *Biden v. Texas*, 597 U.S. 785 (2022), in the context of corrective action). The government addressed none of these cases in its briefs.

In considering whether corrective action moots a complaint, "[t]he salient question is whether [an agency's] corrective action has 'completely and irrevocably eradicated the effects of the alleged violation'" of law or the solicitation. *Id.* (quoting *McTech Corp. v. United States*, 105 Fed. Cl. 726, 731 (2012), and citing *SEKRI, Inc. v. United States*, 163 Fed. Cl. 562, 577 (2022)); *see also SEKRI*, 165 Fed. Cl. at 37 ("On this record, the defendant has not established that there is no reasonable expectation that the alleged violation will recur.").

Alternatively, as explained *supra*, the government may involve the Court in the implementation of proposed corrective action via RCFC 52.2, which provides that this Court, "on motion or on its own, may order the remand of appropriate matters to an administrative or executive body or official." As our appellate court, the United States Court of Appeals for the Federal Circuit, explained in *SKF USA Inc. v. United States,* 254 F.3d 1022, 1028 (Fed. Cir. 2001), when a court is reviewing a decision of a federal agency, as in this matter, "the government may seek a remand[,] without confessing error, to reconsider its previous position." In such a situation, the trial court has "substantial discretion" to deny or grant a motion for voluntary remand. *Keltner v. United States*, 148 Fed. Cl. 552, 563 (2020). Such voluntary remand motions, however, "should not simply be granted in a perfunctory manner[;] [r]ather, such motions should be treated as with any other motion affecting the substantial rights of the plaintiff, by subjecting the government's position to careful analysis to ensure that the motion is properly supported and justified." *Rahman v. United States*, 149 Fed. Cl. 685, 690 (2020) (citing *Keltner*, 148 Fed. Cl. at 563).[8]

According to the Federal Circuit, a remand is usually appropriate where "the agency's request is 'substantial and legitimate.'" *Keltner*, 148 Fed. Cl. at 563 (citing *SKF*, 254 F.3d at 1028). A voluntary remand request may qualify as "substantial and legitimate" where: (1) the agency "provide[s] a compelling justification for its remand request"; (2) "the need for finality" does not "outweigh the [agency's] justification"; and (3) the "scope of [the agency's] remand request is appropriate." *Id.* at 564 (third alteration in original) (quoting *Ad Hoc Shrimp Trade Action Comm. v. United States*, 37 C.I.T. 67, 71

---

[8] *See also Owens & Minor Distrib., Inc. v. United States,* 154 Fed. Cl. 349, 353 (2021) (Tapp, J.) ("Following Judge Solomson's decision in *Keltner*, Judge Hertling concluded that the Court must engage with the record before it, and make a finding that the agency's concerns are actually substantial and legitimate, rather than simply crediting the United States' litigation position . . . ." (citing *Rahman*, 149 Fed. Cl. at 690)). Courts outside of our circuit have similarly either followed *Keltner* or cited it with approval. *See, e.g., Sierra Club v. National Marine Fisheries Service*, 2024 WL 96341, at *7 (D. Md. 2024); *Stevenson v. Wormuth*, 2023 WL 3791721, at *6 (D. Conn. 2023); *American Federation of Teachers v. Cardona*, 2022 WL 1471388, at *4 (N.D. Cal. 2022); *Organic Trade Ass'n v. United States Dep't of Agric.*, 2022 WL 951335, at *4 (D.D.C. 2022) (noting that "if the agency appropriately demonstrates its intent to revisit the challenged decision, a court may consider whether the request for remand is 'substantial and legitimate'" (citing *Keltner*, 148 Fed. Cl. at 563)).

(2013)).[9]  Additionally, "[w]here an agency requests a remand without confessing error, the agency must express some intent to reconsider the original agency decision that is the subject of the legal challenge." *Id.* at 563.

"No matter how courts label the elements of the inquiry, the fundamental questions are why the agency is moving for remand, whether remand would resolve the dispute more efficiently than litigation, and how remand would impact the plaintiffs and their interests." *Sierra Club v. National Marine Fisheries Service*, 2024 WL 96341, at *7 (D. Md. 2024).  "[I]n addition to a compelling justification for the request, the 'scope of the agency's remand request' must be 'appropriate.'" *Stevenson v. Wormuth*, 2023 WL 3791721, at *6 (D. Conn. 2023) (quoting *Keltner,* 148 Fed. Cl. at 564).

### IV.  THE GOVERNMENT'S VOLUNTARY REMAND MOTION IS DENIED

In applying the foregoing principles, the Court finds that the government has not provided a "compelling justification for its remand request." *Keltner*, 148 Fed. Cl. at 564.

For starters, the Court must strain to locate the government's proffered justifications for a voluntary remand.  There appear to be just two.  The first is that a remand would "promote[] judicial efficiency."  Def. Mot. at 6.  The second is contained in the FTC CO's declaration.  Decl. at ¶ 4.  There, the CO asserts that he "was disappointed to see that NetCentrics did not *believe* that it was fairly treated" and that "[t]he proposed remand would ensure that we receive competitive quotations and that both parties *feel* that they received fair treatment and consideration."  *Id.* (emphasis added).

The Court rejects both of the government's putative justifications.

The government's judicial efficiency claims are dubious.  The government proposes corrective action (via its voluntary remand motion) that addresses, at most, only Count I of NetCentrics's amended complaint.  Def. Mot. at 2-3, 5; *see also* Compl. ¶ 60. Yes, the government is correct that if the contract award decision were entirely reversed on remand, NetCentrics's amended complaint would be moot, *see* Def. Mot. at 6.  Such an outcome is implausible, however, given that the government has indicated definitively that it *will not* engage in comprehensive discussions on remand.  Def. Mot. at 5-6.  Indeed, "the vendors will *not* be permitted to submit new quotations, to propose new technical solutions, or to alter proposed pricing."  Def. Mot. at 2 (emphasis added).

The Court does not see how it can conclude that responses to unspecified FTC "communications" on unspecified "areas of [vendors'] quotations" might plausibly result in a change of the award decision.  Def. Mot. at 2, 4.  Moreover, insofar as the government

---

[9] This is the test the government relies upon in its remand motion.  Def. Mot. at 4 (discussing *Keltner* and *Ad Hoc Shrimp*).

will *not* engage in discussions, the government's proposed corrective action does not moot even Count I of NetCentrics's amended complaint, which alleges that the FTC engaged in discussions with Leidos and must now engage in discussions of the same quality with NetCentrics. Perhaps if the government's planned corrective action on remand committed to the type of discussions to which NetCentrics maintains it is entitled — which may entail the possibility of revising parts of the proposal, including price, precluded under the government's remand proposal — the Court *may* have been persuaded to take a different view. But it does not, rendering the government's proposal patently inadequate.[10]

The second justification — that the contracting officer wants to alleviate NetCentrics's bad feelings — undermines, rather than supports, the government's position. It amounts to the classic non-apology apology: "I am sorry you feel I did something wrong."[11] It is hard to take seriously the notion that the government intends to reconsider its contract award decision in a meaningful way when the government has not canceled it and the CO's own articulation of the purpose of remand makes clear he does not believe there was any actual or likely defect in the procurement process. This does not mean the Court (or NetCentrics) believes that the agency would carry out its proposed remand in bad faith. But it does mean that the CO's naked (albeit earnest) assertion that it will "continue to consider NetCentrics's remaining allegations in their motion for judgment on the administrative record," Decl. ¶ 8, is insufficient to warrant a remand.

In *Vanquish Worldwide, LLC v. United States*, 163 Fed. Cl. 57, 66 (2022), "the parties filed a joint stipulation of dismissal without prejudice" where the government "decided to rescind the disputed contract award . . . , establish a competitive range, engage in discussions, and accept proposal revisions[,]" thus "render[ing] [the] protest moot." Similarly, in *Syneren*, Judge Meyers held that an agency's new source-selection decision — rendered as part of corrective action after protest complaints had been filed in this

---

[10] NetCentrics is correct that should it "prevail on its unequal discussions count," it is at least plausible that "injunctive relief might also take the form of allowing proposal revisions[.]" ECF No. 31 at 11. The government argues that "the FTC proposes to give NetCentrics the opportunity it seeks," but NetCentrics seeks discussions of the type it argues the government had with Leidos, and not mere "communications … seeking clarification[s]." ECF No. 34 at 8.

[11] A "non-apology apology" is "a statement that has the form of an apology but does not express the expected contrition." Lauren Gailey, *"I'm Sorry" as Evidence? Why the Federal Rules of Evidence Should Include a New Specialized Relevance Rule to Protect Physicians*, 82 Def. Couns. J. 172, 177 (2015). *See also* Rick Reilly, *Regrettlessly Yours*, SPORTS ILLUSTRATED (May 8, 2006), https://vault.si.com/vault/2006/05/08/regretlessly-yours- ("But now, thanks to the discount law firm of Wheezle, Wangle and Dodge, stars can save boatloads of p.r. and legal fees with the first-ever Do It Yourself Athletic Apology--the No-pology™. It's the best way to say 'I'm sorry' without really meaning it. Try it next time you're busted! (Clear throat and read sincerely.)")

Court — constituted "the final agency action before the Court" for review. 168 Fed. Cl. at 770-71 (citing *Biden v. Texas*, 597 U.S. 785, 808 (2022)). But the procedural posture of that case — involving already-completed corrective action — was remarkably different from the one at issue here, as Judge Meyers's explanation in *Syneren* makes clear:

> The record clearly establishes that in [the new source selection decision], the [source selection authority ("SSA")] was considering the award decision afresh rather than attempting to explain the [agency's] prior award decision. In fact, [the agency] *terminated* each of the July Contracts awarded pursuant to [the previous source selection decision], *rendering that decision moot*. As the timeline above shows, [the agency] also reconstituted the [technical evaluation team ("TET")] (to account for personnel leaving the agency) and the reconstituted TET re-evaluated the protestors' technical proposals. The TET then issued a new report . . . . The SSA then considered TET Report-3 and made a new award decision . . . [which] does not attempt to explain [the prior one]; it replaces it with a new award decision based on [the new] TET Report[], the past performance evaluations, and the price evaluations. [The agency] then sent notices and written debriefs to the protestors and awarded new contracts . . . .

*Id.* In contrast to the posture of the protests in *Vanquish* and *Syneren*, the government here has not rescinded the contract award, does not commit to engage in discussions and/or to accept proposal revisions, and does not argue that NetCentrics's protest has been (or *necessarily* will be) rendered moot.

There are other reasons why granting the government's remand request would be inappropriate. For example, the government conceded at oral argument that its proposed corrective action does nothing to address Count VII, involving NetCentrics's OCI allegations.[12] Indeed, as far as the Court can tell, the government's engaging in some additional communications with the vendors would not address *any* of NetCentrics's other claims in its amended complaint.[13] Because there seems only a remote possibility

---

[12] Leidos asserts that the "Agency has already fully investigated and found no evidence to support NetCentrics' baseless and vague allegations that Leidos' incumbent performance . . . somehow gave it an unfair competitive advantage." ECF No. 32 at 5. But whether that is the case is precisely what is at issue *on the merits*. Leidos cannot ask this Court to resolve NetCentrics's claims without reviewing the administrative record — and the parties' respective motions for judgment on the administrative record — in order to conclude at this stage that a remand is warranted.

[13] In the govenrment's reply brief in support of its remand motion, the government for the first time asserts, based on a declaration from the CO, that "the agency expressly intends to consider

that the award decision would change on remand, we are likely to be right back where we started, with only delay to show for it.[14]  In sum, this Court has little confidence that a remand at this juncture would advance judicial efficiency, particularly where, as here, the Plaintiff already has filed its MJAR and thus the process of resolving the case on the merits has already commenced.  Paraphrasing *Ad Hoc Shrimp*, the need for finality outweighs the government's weak justification for a remand.  *Cf.* 37 C.I.T. at 71.  That need would be better served by proceeding to litigate the merits of this case.

Yet another problem with the government's remand request is that it indicates that the FTC "may choose to allow vendors to demonstrate commitment to solutions they already proposed by, for example, agreeing to financial incentives or penalties."  ECF No. 29 at 2.  But the Court does not see how such a proposal-alteration would constitute anything other than discussions,[15] nor would it be rational to seek such incentives and then preclude vendors from altering proposed pricing as the government represents it would do.  *Id.*  In that regard, the government informs the Court that, on remand, "vendors will not be permitted to submit new quotations . . . or to alter proposed pricing" in order "[t]o preserve the integrity of the procurement competition."  *Id.*[16]  But during the Court's hearing on the government's motion, Tr. 39-40, this explanation fell apart.  The government could not explain what about the competition thus far necessitates a limitation on revised pricing.  *Id.* at 39:5-40:5.  Indeed, the government has since filed a revised declaration from the contracting officer, the very purpose of which was to withdraw an erroneous factual predicate for the government's argument that permitting pricing revisions would somehow undermine the procurement's fairness.  *Compare* Decl. ¶ 7 (original CO declaration arguing that "[b]ecause both parties have now seen the submitted proposals, we believe certain limitations are necessary on remand to ensure a fair process[,]" including "a general prohibition on changes to proposed pricing"), *with* ECF No. 37-1 ¶ 7 (revised CO declaration asserting that "both parties now possess

---

NetCentrics's other allegations in this protest as part of its reconsideration."  ECF No. 34 at 12 (citing Decl. ¶ 8).  This remand ground was not articulated in the government's motion and thus the Court finds it untimely and declines to consider it.  Even if this Court were to consider it, however, generic expressions of a willingness to reconsider a particular position are insufficient to support a remand.

[14] The Court agrees with NetCentrics that "[t]he government's failure to specify what clarifying questions the FTC intends to ask or how those exchanges would have a meaningful impact on the FTC's current best value decision underscores the absence of justification here."  ECF No. 31 at 9.

[15] *ENGlobal Government Services, Inc. v. United States*, 159 Fed. Cl. 744, 766 (2022) ("Where a proposal has been substantively revised or modified, discussions have occurred.").

[16] The Court agrees with NetCentrics that "the proposed scope" of the remand may "unfairly require[] offerors to commit to new solutions" — *i.e.*, financial incentives or penalties — "without being able to adequately consider the risk of such new commitments in their pricing."  ECF No. 31 at 13.

significant information about the quotation submitted by their competitor"). Nowhere, however, does the government ever explain *why* or *how* permitting revised pricing would be unfair where, as here, the pricing has been fully exposed to both competitors via a prior GAO decision. *NetCentrics Corp.*, 2023 CPD ¶ 247, 2023 WL 8113189, at *2 (Comp. Gen. Oct. 23, 2023) (noting that agency's "reevaluation of quotations led to the selection of Leidos's quotation as the best value to the government at a total evaluated price of $103,555,223.38, compared to NetCentrics's total evaluated price of $104,624,007.06").[17]

\* \* \* \*

In sum, "[w]hether the question is mootness or the general propriety of corrective action, this Court must have details." *AccelGov*, 166 Fed. Cl. at 611. Here, the government vaguely proposes some further communications (of undisclosed scope) with vendors, all while inconsistently asserting that vendors may be able to propose changes that impact price but will not be permitted to change their proposal or pricing — and all for the express purpose of addressing not a putative error or procurement defect but rather how NetCentrics *feels* about the procurement process.

The government's motion to remand this case is **DENIED**. On or before Monday, February 19, 2024, the parties shall file a joint status report, proposing a schedule for resolving this case on the merits.

**IT IS SO ORDERED**.

s/Matthew H. Solomson  
Matthew H. Solomson  
Judge

---

[17] The government asserts that "it would be unfair to permit vendors to leverage knowledge of their competitor's quotation to gain a competitive advantage in this procurement," ECF No. 34 at 14, but does not explain how there would be any unfairness where, as here, neither competitor has more information than the other. While the Court agrees with the government, *see id.* at 14-15, that it "may *limit the scope* of discussions, and corresponding final proposal revisions, in a variety of circumstances," *ENGlobal Government Services*, 159 Fed. at 774 (emphasis added), the government here represented that it would not engage in discussions, not permit any proposal revisions, and generally did not justify its proposed corrective action sufficiently given NetCentrics's claim in Count I.